```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                                CRIMINAL ACTION NO. 2:17-00083-02

**DAVID WAYNE YOUNG**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the defendant's motion to suppress the fruits of a search warrant that has been the subject of an evidentiary hearing. The court makes the following findings of fact and the conclusions of the law reached thereon.

On March 21, 2017, the mother of a 14-year old child came to the Boyd County Sheriff's Office near Ashland, Kentucky, and reported to Deputy Phillip Piercy that her daughter had been receiving inappropriate text messages. After discovering the text messages, the mother said that she had gone on the PlentyOfFish dating site, which is a chat room that describes itself as a dating app for singles to communicate with one another. There she engaged in text messaging with an individual

who turned out to be the defendant, David Young. She did so under the user name, "lookingforlove0480."

The defendant had posted a profile on PlentyOfFish which showed his username as "DYashlandky." His profile stated, among other matter, the following:

"Looking for more from life"

46, Ashland

Intent    Wants to date but nothing serious

On the previous evening, March 20, 2017, the defendant and the mother exchanged various text messages in which the defendant said he was looking for, "A friend to share each other,[1]" to which the mother replied, "As in a hook up friend or friend with benefits??? One night stands??? Would you be willing to pay for friendship??" The defendant responds, "Friends with benefits." The defendant then asks her what she is looking for and she responds, "I'm not sure . . . so how young is to young for you???" He replies, "18," and asks, "How old is to old for you," and "Are you wanting to chat," the latter coming in at 11:00 p.m. She does not respond until 12:16 a.m. on March 21,

---

[1] It is noted that the quotes set forth herein are stated exactly as they appear in the transcript, including the omission marks, ". . .", except for one instance of bracketed [ ] material.

2

2017, asking, "Oh . . . you wouldn't see anyone younger if they didn't tell anyone;" following which he, at 2:15 a.m. and 2:31 a.m., asks her age and states, "I'm very interested in meeting you."

She does not respond until 8:59 a.m. stating, "I am interested in meeting and itsays 36 but I'm really only 15 . . . but I'm very mature and experienced for my age . . . and I won't tell if you don't." He then promptly responds with seven text messages over the next fifty-two minutes, to which no reply is given, ending at 9:51 a.m. as follows:

> Ok where do you live
>
> Am interested
>
> When do you want to meet
>
> Are you still there
>
> Are you still there
>
> Do you have another way I can contact you like a cell number I can text
>
> Hello are you there sweetie

The mother finally gave a response at 10:12 a.m. saying, "Sorry busy at school." The text exchanges continued as the defendant asked, "Ok what school you go to sweetie." She

replies, "Where do you live I can come to you." The defendant does not want to meet near his home and says, "Maybe we could meet and drive somewhere," followed by, "What grade are you in." She responds, "I'm in the 8 th." After further exchanges, the defendant asks, "Do you have a place for us to go." She responds, "Yes we can go back to her house [referring to a friend at school] . . . her parents are at work until 5." A minute later the defendant asked another question to which he receives no answer. Forty-two minutes later he asks, "Are you going to answer me sweetie," receiving nothing. He asks at 12:23 p.m., "Did you change your mind."

When Deputy Piercy met with the mother he contacted Detective Adam Daniels of the Ashland Police Department who was asked to assist in following up the mother's concern. Deputy Piercy obtained the mother's written permission to take over her PlentyOfFish account and continue the discussions with the defendant. It was at 12:26 p.m. when Det. Daniels began responding to the defendant as if he were the 15-year old female.

Daniels first responded at 12:27 p.m. and the conversation resumed with the defendant's request for the 15-year old's name and picture. Daniels identified her as Latisha

Kern and furnished a picture of a young female police officer who looked younger than her age. Upon receipt of the picture, the defendant texted, "You are sexy." Daniels immediately responded, "You sure you wanna meet? 15 is ok? I'm about to leave." Defendant responds with "When are you leaving school" and "Ok." They agree to meet at the Ak Sports Park which was determined to be close to her friend's house.

Daniels then asked what kind of car one would look for. The defendant warily responds, "I will let you know when I get there Because I am a little nervous that this is a police trap." Daniels immediately responds:

> I'll be in the dug out so no one sees us waiting. I'm not trying to get prego so you have to bring rubberz.
>
> I'm ain't no pig . . . ur not a cop r u? I don't wanna get busted either.

To this the defendant replies, "Ok," and asks, "How many guys have you f**k*d." Her response was, "1 but messed around before and did everything else." The defendant and Daniels, on behalf of the fictitious 15-year old female, then agree that they are to meet at 3:30 p.m. by the dugout and the conversation ends with Daniels saying, "Bell ringing see u." Three minutes later the defendant advises that the car he will be driving is a

"truck," without further description. There being no response, the defendant then at 1:26 p.m. says, "Hey." There are no more messages until the defendant arrives at the Ak Sports Park when at 3:50 p.m. he texts, "Where you at."

When the defendant arrived at the park, he drove into the parking lot area and looked around as if looking for someone. As he did so, he backed his vehicle into a parking slot and after being there momentarily, drove off by going back to the highway from which he had entered. He was stopped by the law enforcement authorities two or three blocks away, at which time his cell phone was seized.

The defendant was charged, according to the "Uniform Citation" filed by Deputy Piercy, under Kentucky law with the unlawful use of electronic means originating or received within the Commonwealth to induce a minor to engage in sexual or other prohibited activities. One week later, on March 28, 2017, Deputy Piercy, who had observed the texting exchange as it took place between the defendant and Detective Daniels, sought a search warrant of the defendant's iPhone 5S, phone number (740) 861-0581, as well as a Dell computer that had been voluntarily surrendered to the officers at the defendant's home by his wife.

The officers had ample reason to seek a search warrant for defendant's iPhone and home computer.  In particular, the phone found in his possession and seized at the time of his arrest was likely the instrument used by him, rather than by someone else, to communicate on the PlentyofFish site.  The contents of the phone would be reasonably expected to confirm that the device had been used by him to entice a 15-year old female into a sexually explicit encounter.

In his accompanying affidavit, Deputy Piercy stated the following as the factual basis for his request for a search warrant:

> Officers from the Boyd County Sheriff Department and the Ashland Police Department, received permission from [redacted] to take over the Plenty of Fish account "lookinforlove0480", and Young continued to pursue the person he believed to be a 15 year old girl.  Young asked the person he believed to be a 15 year old girl, to meet him at the AK Sports Park located at 4600 Blackburn Avenue, and waited for Young to arrive.  At approximately 1545 hrs, Young arrived operating a green Ford Ranger truck.  Officers allowed Young to leave the parking lot due to several young people playing in the park.  Officer's conducted a traffic stop on the green Ford Ranger truck on the parking lot of the Red Cross located at 4201 Blackburn Avenue.  At this time Young was taken into custody and the Iphone was in his possession and seized as evidence.  Officer's then went to Young's home at [redacted] where Young's wife voluntarily surrendered possession of the Dell Computer.

In its essence, Deputy Piercy attests that:

> Officers . . . received permission . . . to take over the PlentyofFish account "lookinforlove0480", and Young continued to pursue the person he believed to be a 15 year old girl. Young asked the person he believed to be a 15 year old girl, to meet him at the AK Sports Park . . . At approximately 1545 hrs, Young arrived operating a green Ford Ranger truck . . . At this time Young was taken into custody and the Iphone was in his possession and seized as evidence.

The affidavit fails to allege probable cause. Nonetheless, a search warrant was issued by a Boyd County Circuit Judge. Detective Daniels executed the warrant, finding nothing on the computer. As to the iPhone, Detective Daniels found not only that which is set forth in the transcript of the texting exchanges identified and quoted above, but also evidence of other similar crimes involving the defendant that occurred at about the same time as the one for which the defendant was arrested. During the period between March 19 and March 21, 2017, the defendant engaged in text messages with his co-defendant, Misty Dawn Baisden, on which the twelve-count superseding indictment in this case is based. During the exchange between the defendant and his co-defendant, she offered to make a 12-year old female available at some point for sex with him and he offered to make a 14-year old female available at some point for sex with her, all as more fully set forth in a

companion order today entered on a motion in limine in this case. The resulting charges are more specifically set forth in the superseding indictment.

While the search warrant was not based on factual statements adequate for its issuance, Detective Daniels, who executed the warrant, was acutely aware of all of the facts and circumstances that formed the basis for the Kentucky charge of the violation of Kentucky Revised Statute § 510.155. In particular, he knew that the defendant was arranging a meeting with one whom defendant believed to be a 15-year old female in order that he could go with her to a nearby house of one of her friends for sexually explicit purposes. In response to the 15-year old's statement that he should bring condoms because she did not want to become pregnant, he answered, "Ok," as testified to by Detective Daniels, and he immediately added, "How many guys have you f**k*d." He received in response, "1 but messed around before and did everything else." Just before that exchange he had stated, "I am a little nervous that this is a police trap." By that statement the defendant made it quite clear that he knew he was violating the law by enticing a 15-year old eighth grader into a sexually explicit encounter that

very day and, doubtless, in the hope that such a relationship would be a continuing one.

Armed with such extensive knowledge of the offense, Detective Daniels acted completely in good faith in executing the invalid warrant for which the affidavit had been negligently prepared by his fellow officer.  Consequently, the <u>Leon</u> good faith exception to the exclusionary rule of the Fourth Amendment is applicable here.  <u>United States v. Leon</u>, 468 U.S. 897 (1984). <u>Leon</u> directs that the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances."  468 U.S. at 922 n. 23. This enables the court to look outside the four corners of the deficient affidavit when determining, in light of all of the circumstances, whether an officer's reliance on the warrant was objectively reasonable.  <u>United States v. McKenzie-Gude</u>, 671 F.3d 452 (4th Cir. 2011).  Detective Daniel's execution of the warrant was, under these circumstances, objectively reasonable.

The court accordingly ORDERS that the defendant's motion to suppress be, and it hereby is denied.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED: January 24, 2018

John T. Copenhaver, Jr.
United States District Judge